## ROSSMAN *v.* HEDDEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 332.   Argued April 25, 1892. — Decided May 16, 1892.

Plain glazed and plain enamelled tiles, imported in February, May and June, 1886, were subject to a duty of fifty-five per cent as other earthen ware not specially enumerated.

The classification of a dutiable article is to be determined as of the date when the law imposing the duty was passed.

THE court stated the case as follows:

This was an action brought in the Circuit Court of the United States for the Southern District of New York to recover duties alleged to have been paid under protest upon three importations of tiles by the steamships Canada, Furnessia and Rhaetia, entered at the port of New York in 1886. The case was tried by the Circuit Court (Lacombe, J.) and a jury in October, 1888.

From the bill of exceptions it appears that the plaintiff introduced testimony showing the importation of the tiles described in the bill of particulars, and that the defendant, as collector of customs, levied and collected duty at 55 per cent ad valorem thereon; and that the plaintiff in due season protested and appealed to the Secretary of the Treasury, and brought suit within the time prescribed by law.

The ground of the objection stated in the protests was, as to the Furnessia, that the tiles "were dutiable at 35 % ad valorem, under section 2499, Rev. Stat., by similitude to

encaustic tiles;" and as to the Canada and Rhaetia, that the tiles "were dutiable at 20 % ad valorem, under Tariff Schedule B, as paving tile, directly or by virtue of section 2499, Rev. Stat. If not so dutiable, then they should pay 35 %, by similitude to encaustic tiles, under said section and schedule."

· Testimony was given showing "that upon the entry *ex* Canada, Feb'y 24, '86, a portion of the duty was paid on the 26th day of February, 1886, and the remainder on the 10th day of May, 1886. The only goods in this suit upon said entry were two packages of tiles, marked D. F. & T., 25,306, 25,307, on which duty was taken on entry at 35 % ad valorem, the same being entered as encaustic tiles; both of said packages were delivered to the plaintiff on or before March 18, 1886; duties on said entry to the amount of $126.10 were paid February 26, 1886 (the date of said entry); and an increased duty of $14.30 (total, $140.40) was paid May 10th, 1886. The bill of particulars claimed, as an excess of duty on this entry, $12.20. . . ."

Testimony was further given that all the tiles in dispute were called in trade plain glazed and plain enamelled tiles.

Those having the color in the glaze are termed enamelled, and those having the color in the body are termed plain glazed.

The goods were described in the plaintiff's entries as follows: 1. By the Canada, February 26, 1886: Two packages encaustic tiles. 2. By the Furnessia, May 25, 1886: Eight casks plain white tiles. 3. By the Rhaetia, June 4, 1886: Eight hogsheads, one case, earthenware tiles. "The invoice by the Furnessia described the goods as glazed earthenware tiles."

Witnesses after testifying to the use of tiles on March 3, 1883, and prior thereto, were asked as to their use since, and for what purposes they were used or intended to be used now, or for what purposes imported; but the court sustained objections to the questions and plaintiff excepted.

Testimony was adduced on plaintiff's behalf "by dealers in tiles of long experience, that on March 3, 1883, and immediately prior thereto, the tiles in suit were used in this country

to lay down. in cement in vestibules, on hearths, bath-room floors and walls, on kitchen floors under sinks, interspersed with unglazed tiles on floors in church chancels, conservatories, hospital floors and walls, and generally in places where either a non-absorbent cleanly tile was required or where there was little wear and tear and a particularly ornamental effect was desired.;" and also "by importers and large dealers in tiles of many years' experience that at the date of the passage of the act of March 3, 1883, the term paving tile had no meaning in the trade and commerce of this country different from its ordinary meaning, and meant tiles used for paving, and gave evidence tending to show that plaintiff's importations per Canada and Rhaetia were such tiles;" and also "by archi- tects of long experience in this country that plaintiff's tiles were used for paving purposes; that tiles used. for hearths were considered paving tiles; that the hearth, architecturally, was a part and an extension of the floor, and that a paving tile was a tile made to be laid horizontally and flat and intended so to be used.

"It appeared, however, that the principal use of the tile imported per Furnessia, represented at the trial by sample Exhibit No. 5, was for walls, though sometimes used for hearths, bath-room floors, and under kitchen sinks and other places, at the date of the passage of the act of March 3, 1883; that it was used for the same general purposes as glazed encaustic tiles.

"That encaustic tiles consist of two varieties, glazed and unglazed; the unglazed being generally used for floors and hearths and the glazed being generally used on walls, though sometimes for hearths and other places.

"Testimony was also given on the part of the plaintiff, by large dealers in earthenware of long experience, that the term 'earthenware' as used in the trade and commerce of this country, does not, and did not at the date of the passage of the tariff act of March 3, 1883, include tiles of any kind, but referred principally to tableware and pottery.

"It further appeared that all the tiles in suit and all paving and encaustic tiles described in Tariff Schedule B, are made.

of clay, all baked in kilns, and generally made by the dust process, from pulverized clay molded under pressure in a dry state.

" Witnesses on the part of the defendant, including manufacturers of tiles, officers of tile companies, dealers, and salesmen of tiles, tile designers and architects, all of large and long experience, testified that the term paving tile had a well-known designation and definition in the trade and commerce of this country on March 3d, 1883, and prior thereto, and referred to an unglazed, hard-baked tile used for flooring purposes, and that the term paving tile and flooring tile at that time were interchangeably used to denote the same kind of a tile; that the tiles in suit were made of a different kind of clay from the so-called paving tile; that the body of the plaintiff's tiles in suit was softer, more porous, and a more expensive body than the body of a paving tile; that the body of the tiles in suit was composed of china clay, Cornwall stone and flint, and some other materials, costing from $15 to $22 a ton, while the clay used in the manufacture of paving tile is a different and cheaper kind of clay, worth $1.50 a ton, and is not porous and not absorbent, and which body is baked hard to stand the wear and tear of being trod or walked upon; that paving tiles were used to be walked and trod upon where there was wear and tear, and that the tiles such as plaintiff's were used for walls, facings, dadoes, and decorative purposes, and sometimes used in modern hearths, which are protected by a fender and raised from the floor and not to be walked upon and are considered part of the mantels and grates and not as a part of the floor; that such tiles as plaintiff's have been used somewhat for hearths since March 3, 1883, and were not used to any extent on hearths prior to March 3d, 1883.

" That the tiles in suit were not adapted for any wear and tear, and would be dangerous to walk upon on account of their slippery surface, and easily become broken if used for flooring purposes, except for ornament on floor borders. That encaustic tiles are made of several kinds of clay instead of one only, with the colors burned in.

" That encaustic tiles are both glazed and unglazed; that the

unglazed encaustic were sometimes used for flooring purposes, and the glazed encaustic were for ornamental purposes, and for walls, dadoes and facings.

"The tiles are now generally made by the dust process, dry clay being subjected to great pressure in moulds, and then baked; that the paving tiles are baked once, the glazed or enamelled tiles are baked twice; that the modern hearth is about eighteen or twenty inches wide, guarded by a brass or iron fender, and is not used to be walked upon, and that such hearth is not considered by architects to be a part of the floor.

"The testimony of a potter of very long experience tended to show that in his experience these articles were earthenware."

During the course of the trial the court held that there was no "room for the similitude doctrine," and that there was only a single question for the jury, "whether they are paving tiles or not," and plaintiff excepted.

As to the importation by the Canada, the court instructed that the verdict must be for the defendant "for the reason that the payment was not in fact made to obtain possession of the goods." As to that by the Furnessia, the court directed a verdict for the defendant because the protest of the plaintiff restricted him to the single claim of similitude to encaustic tile, which could not be sustained upon the testimony. As to the importation by the Rhaetia, the court charged:

"The old English word 'ware,' with which you are familiar in the combination of hardware, tinware, etc., is a comprehensive word. It is defined by Worcester and Webster as 'goods, commodities, merchandise,' and in the same dictionaries the term 'earthenware' is defined as 'ware made of earth or clay.'

"Reading for the word 'ware' the definition which the dictionary gives for it, we will find as the definition of 'earthenware' 'goods, commodities or merchandise made of earth or clay.'

"That, you see, is a very general, broad and comprehensive word, and it was evidently used by Congress in that same sense, for we find the word 'earthenware' used as the heading of a schedule which contains articles as dissimilar as a porcelain teacup, a Parian vase, a fire-brick, and a slate pencil.

" To which plaintiff, by his counsel, then and there excepted.

" It is sufficiently broad, this word earthenware, to cover tiles, to cover the articles imported by the plaintiff here as they appear and have been described by the witnesses; therefore, unless they are covered by some other provision of the tariff act, they must be held dutiable as earthenware and the determination of the collector in that respect sustained.

" To which the plaintiff, by his counsel, then and there excepted."

Several instructions were requested by plaintiff and refused, but as the affirmative rulings involved the disposition of the questions presented by them, they need not be repeated here.

The jury found a verdict for the defendant, and judgment was entered thereon, and a motion for new trial having been overruled, the case was brought by writ of error to this court.

The charge of the court is reported in full in 37 Fed. Rep. 99.

By section 6 of the act of March 3, 1883, (22 Stat. 488, 491, 495, c. 121,) the following sections of the Revised Statutes were reënacted as amended.

" SEC. 2499. There shall be levied, collected and paid on each and every non-enumerated article which bears a similitude, either in material, quality, texture or the use to which it may be applied, to any article enumerated in this title as chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles on which different rates are chargeable, there shall be levied, collected and paid on such non-enumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest duty; and on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value may be chargeable."

" SEC. 2502. There shall be levied, collected and paid upon all articles imported from foreign countries, and mentioned in the schedules herein contained, the rates of duty which are, by the schedules, respectively prescribed, namely : "

"Schedule B. — Earthenware and Glassware.

"Brown earthenware, common stoneware, gas retorts and stoneware not ornamented, twenty-five per centum ad valorem.

"China, porcelain, parian and bisque, earthen, stone and crockery ware, including plaques, ornaments, charms, vases and statuettes, painted, printed or gilded, or otherwise decorated or ornamented in any manner, sixty per centum ad valorem.

"China, porcelain, parian and bisque ware, plain white, and not ornamented or decorated in any manner, fifty-five per centum ad valorem.

"All other earthen, stone and crockery ware, white, glazed or edged, composed of earthy or mineral substances, not specially enumerated or provided for in this act, fifty-five per centum ad valorem.

"Stoneware above the capacity of ten gallons, twenty per centum ad valorem.

"Encaustic tiles, thirty-five per centum ad valorem.

"Brick, fire-brick and roofing and paving tile, not specially enumerated or provided for in this act, twenty per centum ad valorem.

"Slate, slate-pencils, slate chimney pieces, mantels, slabs for tables and all other manufactures of slate, thirty per centum ad valorem.

"Roofing-slates, twenty-five per centum ad valorem."

*Mr. Edward Hartley* for plaintiff in error.

*Mr. Assistant Attorney General Parker* for defendant in error.

Mr. Chief Justice Fuller delivered the opinion of the court.

By the protest as to the importation by the Rhaetia it was claimed that the goods were subject to duty at twenty per

cent. as paving tiles, or by similitude to paving tiles, or chargeable at thirty-five per cent by similitude to encaustic tiles. The entry described the articles as "eight hogsheads, one case, earthenware tiles," and the collector assessed them as earthenware composed of earthy substances. The court held that the similitude clause did not apply, and the jury found against the plaintiff upon the only issue submitted to them, namely, whether the articles were paving tiles or earthenware. It was not contended that these tiles were encaustic tiles, composed of several kinds of clay instead of one only; and as to their identity with paving tiles, defendant's evidence tended to show that at the time of the passage of the act paving tiles were commercially known as unglazed, hard-baked tiles, and that the tiles in suit were of a different kind of clay, composed of softer, more porous and more expensive clays, and costing ten times as much as paving-tile clay. We must assume that the tiles were neither encaustic nor paving tiles, and if they properly fell within the fourth paragraph they cannot be held to be non-enumerated articles and taxed by similitude. *Arthur* v. *Butterfield*, 125 U. S. 70; *Mason* v. *Robertson*, 139 U. S. 624.

The covering of roofs, floors, and walls with tiles made of many different materials is of very ancient origin, and there is much interesting information in respect of their manufacture and that of pottery to be found in works on those subjects.

So far as this case is concerned, we see no reason to question the sufficiency of the ordinary definition of tiles as plates or pieces of baked clay, used for covering roofs, floors and walls, and for ornamental work of various kinds, as well as for drains, etc. And that such pieces being made of earth are earthen, and being earthen goods, commodities or merchandise, are "earthenware," we think is clear.

Webster defines "earthenware" as "vessels, and other utensils, ornaments, or the like, made of baked clay;" and we agree with counsel for defendant in error that the words "or the like," and the cross-reference to "pottery," are broad enough to include the tiles in suit under the fourth paragraph.

The title to Schedule B divides the subjects under it into

two classes, "earthenware," and "glassware," but counsel insists that the groups are three: "(1) earthenware; (2) tiles, brick, and slate; (3) glass and glass articles."

Reference is made to the tariff legislation since 1842 to show that tiles and earthenware were considered different things, and that tiles were always associated with bricks as similar things. It is argued that this distinction was intended to be preserved in the act under consideration; but, we are of opinion that this conclusion does not follow, and that it was the intention of Congress to place all of the articles in Schedule B in one or the other of the two classes designated in the heading. All of the schedule relates to glass, except the first nine paragraphs. The first five, it is conceded, relate solely to earthenware, and the next four are encaustic tiles; brick, fire-brick, and roofing and paving tiles; slates, slate-pencils, etc.; and roofing slates; all consisting of earths, though only two hardened by man. These four are all in some respects in similitude, and although a difference between a Sevres vase and a roofing slate may be admitted, they are not inappropriately placed where they are, and we perceive no adequate ground for holding that they should be treated as a class by themselves.

The fact seems to be that these tiles were decorative earthenware tiles, called in trade, as appears from the evidence, plain glazed and plain enamelled tiles, those having the color in the glaze being termed enamelled, and those having the color in the body being termed plain glazed; and in reference to such tiles the department ruling is that they are properly assessed as "glazed earthenware." Syn. Dec. 1885, 7051; and see *Id.* 1877, 3352; *Id.* 1878, 3705.

We think the view taken by the court entirely correct, and this disposes also of the importation by the Furnessia. The protest rested upon the sole ground that the articles "were dutiable at 35 % ad valorem, under section 2499, Rev. Stat., by similitude to encaustic tiles." The articles were described in plaintiff's entry as "eight casks plain white tiles," and in the invoice as "glazed earthenware tiles." The collector taxed them under the fourth paragraph.

It appeared that the principal use of these tiles was for walls, though sometimes used for hearths, bath-room floors, and under sinks, and for the same general purposes as glazed encaustic tiles; but if they were covered by the fourth paragraph then they could not be classed with encaustic tiles by similitude. And that these "plain white tiles," or "glazed earthenware tiles" were within that paragraph, follows from what we have already said. There was nothing to be submitted to the jury.

The tiles brought by the Canada were described in plaintiff's entry as "two packages encaustic tiles," and were delivered to plaintiff on or before March 18, 1886. It was shown that a portion of the duty was paid on the day of entry, February 26, and the remainder May 10. As plaintiff had been in possession of these tiles for some weeks before payment of the excess, he did not pay in order to obtain possession, and the instruction of the court to find for the defendant was therefore correct.

Plaintiff's counsel insists that he originally paid the difference between paving tiles and encaustic tiles to obtain possession, but as the tiles were described as encaustic, and chargeable by law as such at a duty of thirty-five per cent, this contention is inadmissible. There is nothing to show that the Circuit Court was apprised that plaintiff's claim was that he had paid the excess between twenty and thirty-five per cent, and as payment of the excess between thirty-five and fifty-five per cent was made May 10, and the protest filed and appeal taken to the Secretary of the Treasury on that day, it is plain that the Circuit Court was not mistaken as to the facts.

Finally, we are of opinion that the court did not err in excluding evidence as to the purposes for which similar tiles were used after March 3, 1883, or for what purposes they were intended to be used or were imported, at the time of the trial. This came within the rule that the classification is to be determined as of the date when the law imposing the duty was passed. *Curtis* v. *Martin,* 3 How. 106, 109; *American Net and Twine Co.* v. *Worthington,* 141 U. S. 468, 471.

*Judgment affirmed.*