(C. D. 1005)

V. W. DAVIS *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 20, 1946)

*Wallace & Schwartz; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel); and *Faegre & Benson* (*Robert J. Christianson* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; OLIVER, P. J., dissenting

MOLLISON, Judge: Section 3424 (a) of the Internal Revenue Code (title 26, U. S. Code) imposes an excise tax on the importation of rough, planed, or dressed lumber at the rate of $3 per thousand feet, board measure, which rate, by virtue of the Canadian Trade Agreement, T. D. 49752, was reduced to $1.50 per thousand feet, board measure. In the said subsection it is also provided that—

* * * The tax imposed by this subsection shall not apply to lumber of Northern white pine (pinus strobus), Norway pine (pinus resinosa), and Western white spruce.

Plaintiff imported into the United States certain spruce lumber designated on the invoices as "Western White Spruce," and entered the same as exempt from the tax imposed under section 3424 (a), *supra*. Upon liquidation, however, the collector assessed duty thereon under the said subsection, whereupon this protest was filed, claiming exemption under the above-quoted provision.

It may be said that another claim was made in the protest with respect to the board measurement of the lumber covered by the entries, but no proof was offered in support of such claim, and it is therefore overruled.

The spruce lumber at bar came from trees grown in the western part of the Province of Ontario, Canada. It is the plaintiff's contention that the merchandise is lumber of Western white spruce within the meaning of the term as used in the statute, the principal reasons assigned being that it is white spruce lumber which comes from the western part of Canada, and that it is exactly the same class and kind as the white spruce lumber which comes from the adjoining Province of Manitoba which, it is claimed, is known as Western white spruce.

It is the defendant's contention that only the specific kind of lumber known at the time of passage of the Revenue Act of 1938 (52 Stat. 447, from which the Internal Revenue Code provision here involved was derived) by the individual name. "Western white spruce" is entitled to the exemption from tax.

It is not disputed that there is a species of tree which grows from the Atlantic to the Pacific coasts of Canada (as well as in certain

portions of the United States) known botanically as *picea glauca* or white spruce. Testimony was offered on behalf of the defendant to the effect that the wood from *picea glauca* varies in density, the lighter wood coming from the white spruce grown in the western part of Canada, particularly the so-called "Prairie Provinces" of Manitoba, Saskatchewan, and Alberta, while the heavier wood comes from the trees grown in the eastern portion of Canada. The difference in density is said to be caused by different rates of growth. The theory underlying this is that the faster growth, and consequently the lighter wood, is obtained in the west, probably due to dissimilarity in soil and climate from the east.

Whether Western white spruce is a distinct variety of white spruce is a question on which it seems that botanists are not in agreement. At least two, namely, Nathaniel L. Britton, Director in Chief, New York Botanical Gardens, in his work "North American Trees" (1908); and George B. Sudworth, Dendrologist, U. S. Department of Agriculture, in his "Check List of the Forest Trees of the United States, Their Names and Ranges" (1927), Miscellaneous Circular No. 92 of that Department, recognize *picea glauca* variety *albertiana* as Western white spruce. Dr. Louis W. Rees, Assistant Professor of Forestry, University of Minnesota, who testified on behalf of the plaintiff at the trial of the issue, does not recognize Western white spruce as a separate botanical variety of white spruce. Many of the publications relating to North American forestry consulted by the court do not list Western white spruce at all, although they all list *picea glauca* or white spruce.

However, it is not the contention of either party herein that Western white spruce is a variety of white spruce separate and distinct botanically from other white spruce. As shown by the record, the classification of the collector was based upon a Treasury Department ruling that for the purpose of section 3424 (a), *supra*, Western white spruce is limited to such spruce growing in Manitoba and the other more westerly provinces of Canada, and does not grow in Ontario.

A glance at a map of Canada is sufficient to reveal (1) that that portion of the Province of Ontario from which the wood at bar came is located about the central part of Canada, and (2) that the boundary between Ontario and its adjoining province on the west, Manitoba, is an imaginary line and not what might be termed a natural line such as would affect the soil and climate on one side as distinguished from the other, and, consequently, the density of *picea glauca* grown on either side of the boundary. Hence it may be said to be logical, and, indeed, there is evidence in the record before us that it is a fact, that the *picea glauca* grown in the western part of Ontario (the locality in which the lumber at bar originated) and that grown in the eastern

part of Manitoba are identical in all respects, physically, structurally, and in use.

If the foregoing be true, then it would seem to be incongruous to classify lumber of *picea glauca* coming from one side of the imaginary line as Western white spruce, and lumber coming from the other side, identical in character and use, as something else. Defendant's reply to this is that such nomenclature is founded upon the trade usage and practice in effect at the time of the passage of the revenue act of 1938. Plaintiff, on the other hand, maintains that the term "Western white spruce" had no general significance at that time. Under the circumstances, we think an investigation of what Congress did mean by the use of the term is in order.

In *Union Brokerage Co.* v. *United States*, 9 Cust. Ct. 1, C. D. 649, the question was whether lumber of a species of spruce known as "Engelmann spruce" was embraced by the term "Western white spruce." We there found that the term as used in the revenue act was ambiguous and that resort to the history of the provision in which it was found was warranted. In that case it plainly appeared upon examination of the legislative history that it was the intent of Congress to exclude Engelmann spruce from the exemption provided in the section, and it was not necessary therein otherwise to define the scope of the term "Western white spruce."

As has been said, the situation in this case requires a determination of the legislative intent in the use of the term, and we find that the subject has been exhaustively treated by counsel for both sides in the briefs filed in the case. The following may be said to be a summary of such history, with detail given only as to those portions we deem pertinent.

During the first session of the 75th Congress, four bills were introduced, one in the Senate and three in the House, for the purpose of amending section 601 (c) (6) of the Revenue Act of 1932, which originally imposed an excise tax on lumber. Two of these bills (S. 2628 and H. R. 7518) were companion bills and provided for the exemption from the said tax of "lumber of * * * Western white spruce (Manitoba, Saskatchewan, Alberta),￼" while a third (H. R. 7045) provided such exemption for "lumber of * * * Western white spruce." The fourth bill dealt with a different subject.

Hearings were held by a subcommittee of the Committee on Ways and Means, to which the House bills had been referred, on July 21, 1937, from which it appears that the purpose of the proponents of the bills was to remove the tax from lumber considered to be scarce in supply in the United States and which did not compete with domestic lumber.

During the course of the hearings a report made by the Tariff Commission in connection with S. 2628 was presented by one of the

proponents, and was ordered printed in the record. With respect to the Western white spruce intended to be covered by the bill, it was said therein:

Competition in the United States of western white spruce with domestic spruce or other woods is quite limited. The exemption of western white spruce might cause administrative difficulty unless it is made clear that the exemption applies only to spruce which is grown in the three provinces named (Manitoba, Saskatchewan, and Alberta). With such a geographical designation there would probably be little difficulty in distinguishing the lumber because customs officers could ascertain the character of such lumber in large measure by knowledge of the region from which it is obtained. Without the designation of the three provinces, however, there would probably be serious administrative difficulties even though the botanical name be used. To distinguish one spruce from another requires expert knowledge and frequently a laboratory test is necessary to determine the precise species.

It is suggested that the limitation of the proposed exemption of lumber produced in the three named provinces might raise a question concerning violation of our most-favored-nation commitments. The advice of the State Department should be sought on the latter question.

(See pages 4 and 5 of a pamphlet entitled "Excise Tax on Imported Lumber. Hearings before a subcommittee of the Committee on Ways and Means, House of Representatives, Seventy-Fifth Congress, First Session, on H. R. 7045, H. R. 7518, and H. R. 7934. July 21, 1937. United States Government Printing Office, Washington: 1937.")

None of these bills was enacted into law as a separate statute, but the bills were still pending in the committee at the time a revenue bill which ultimately became the Revenue Act of 1938 was being drafted. This bill, H. R. 9682 (75th Cong., 3d sess.) was the work of the Tax Subcommittee of the Committee on Ways and Means, and after introduction in the House by the Chairman of the said committee on March 1, 1938, was referred to the committee, which, having already approved its provisions, reported it out favorably the same day.

Section 704 (c) of the bill at that time read as follows:

SEC. 704. AMENDMENTS TO TAX ON LUMBER

*    *    *    *    *    *    *

(c) Section 601 (c) (6) of the Revenue Act of 1932 is further amended by inserting after the amendment made by subsection (a) of this section the following: "The tax imposed by this paragraph shall not apply to lumber of Northern white pine (pinus strobus), Norway pine (pinus resinosa), and Western white spruce grown in Manitoba, Saskatchewan, or Alberta."

In the report accompanying the bill (H. Rept. 1860, 75th Cong., 3d sess.), the following is said concerning the foregoing exemptions:

In subsections (c) and (d) of section 704 a further amendment has been made to section 601 (c) (6) to exempt northern white pine and Norway pine and western white spruce grown in certain areas from the tax imposed thereby.

At various times thereafter the House resolved itself into the Committee of the Whole House on the State of the Union for consideration of the bill. During general debate on the bill on March 4, 1938, there was brief discussion touching on the provisions of section 704 (c), *supra*, reported in the Congressional Record (75th Cong., 3d sess., vol. 83, pt. 3, pp. 2880–2881), from which it appears that that provision had been offered in the Ways and Means Committee by Congressman Knutson of Minnesota, a member of the committee.

On March 7, 1938, during general debate (Cong. Rec., pp. 2941–2942), Congressman Snell of New York, who was not a member of the Ways and Means Committee, expressed himself as in opposition to the exemption of any lumber from the excise tax, and questioned the reason why lumber from a certain locality was favored. On the same day, Congressman Oliver of Maine likewise expressed his opposition to the provision (Cong. Rec., pp. 2944–2945).

On March 10, 1938, a committee amendment was offered by Congressman Vinson of Kentucky to strike from the provision the words "grown in Manitoba, Saskatchewan, or Alberta" (Cong. Rec., p. 3181). Asked by Congressman Snell to explain the meaning of the amendment, Congressman Vinson replied:

This is an amendment to section 704, which we could call the lumber amendment. The bill as reported to the House repeals the excise tax upon three classes of lumber—Norway pine, northern white pine, and western white spruce—grown in Manitoba, Saskatchewan, or Alberta. *For obvious reasons the administrative difficulties encountered in the application of this provision would be considerable. The lumber might be grown in some other Province in Canada and be shipped here. The question of whether or not the tax would be imposed on it would be involved in the administration of the revenue law.*

The gentleman from New York the other day very pertinently suggested this was the first instance he had known where we were repealing a tax in regard to imports from a limited section of a country. This is an excise tax, but it is on imports. *It is the thought of the committee there should be no limitation as to the places where white spruce is grown.* [Italics added.]

Mr. Vinson then yielded for a question by Mr. Snell, which was propounded as follows:

If I understand the gentleman's amendment correctly, and I think I probably do now, I agree with the gentleman the amendment makes the bill better than it was, but, of course, it does not go far enough to meet my contention. May I say also that in the general importing of lumber I have never known these special types or species to be considered other than as spruce, hemlock, or pine. When the gentleman states he makes an exemption of white spruce, does he mean the average spruce lumber that comes in here from Canada?

and he answered:

All I can say to the gentlemen is that, as I understand, *western white spruce has a particular significance in regard to a certain class of lumber. Whatever is western white spruce is western white spruce.* [Italics added.]

Pressed further on the matter, Mr. Vinson said:

We had before us evidence that western white spruce was a particular kind. I may say the information the committee had was that western white spruce was grown only in Manitoba, Saskatchewan, or Alberta. * * * *Then we found out that western white spruce is grown in other places, so we are trying to make this provision general in application.* [Italics added.]

In response to further questions by Mr. Snell as to whether lumber designated merely as "spruce lumber" grown in New Brunswick or Quebec would be within the exemption, Congressman Buck of California, a member of the committee, undertook to say:

Mr. Chairman, western white spruce grows in the marshy tundra country of Canada, in those provinces which were included in the bill, but I believe the amendment should be adopted in order to take those specifically designated Provinces out of the language of the text. There is a difference in weight between western spruce and ordinary spruce of about 100 to 200 pounds per 1,000 feet, and these two varieties have entirely different characteristics. It would be a simple matter for anybody engaged in the lumber business to differentiate between western spruce and the kind of spruce to which the gentleman is referring.

Further discussion between Mr. Buck and Mr. Snell on the subject apparently did not satisfy the latter, and Congressman Jenkins of Ohio made the following suggestion:

Why would it not satisfy the objection raised by the gentleman from New York [Mr. Snell] if the gentleman would insert there the botanical or scientific name for western white spruce? Would not that classify it?

—to which Mr. Vinson, the proponent of the amendment, said:

I think it is reasonably clear now. We are trying to meet the criticism presented here by the distinguished majority [minority?] leader in regard to the geographical location.

\*          \*          \*          \*          \*          \*          \*

If western white spruce has a botanical name it will be western white spruce, and it is not my purpose to make any statement in regard to legislative intent more than to say it is "western white spruce," with which we are concerned in this amendment.

Further discussion was had (Cong. Rec. pp. 3182–3184), which, in our view, does not disclose anything with respect to the legislative intent, and which was ended with a vote to agree to the committee amendment.

Subsequently, discussion was had in connection with other amendments offered by Congressman Boileau of Wisconsin (Cong. Rec., pp. 3184–3185) and Congressman Snell of New York (Cong. Rec., pp. 3185–3191), but here again, in our view, no other disclosure of legislative intent with respect to the provision in question was made.

As finally passed by the House, on March 11, 1938 (Cong. Rec., p. 3269), the provision in question read as follows:

SEC. 704. AMENDMENTS TO TAX ON LUMBER

\*          \*          \*          \*          \*          \*          \*

(c) Section 601 (c) (6) of the Revenue Act of 1932 is further amended by in-

serting after the amendment made by subsection (a) of this section the following: "The tax imposed by this paragraph shall not apply to lumber of Northern white pine (pinus strobus), Norway pine (pinus resinosa), Engelmann spruce, and Western white spruce."

We have examined the record of the hearings before the Senate Finance Committee to which the bill was referred upon reaching the Senate ("Revenue Act of 1938, Hearings before the Committee on Finance, United States Senate, Seventy-Fifth Congress, Third Session, on H. R. 9682, An Act To Provide Revenue, Equalize Taxation and for other Purposes—(Revised)" pp. 329–372, 507–513, and 518–527). Most of those hearings were taken up with matters not here involved, but at page 354 there is recorded the statement of R. C. Winton, an officer and representative of numerous lumber companies, who appeared as a director of the National Lumber Manufacturers Association in support of the provision to remove the excise tax on northern white pine, Norway pine, and Western white spruce. A brief prepared by Mr. Winton was printed as part of the record, and shows, among other things, certain characteristics and uses of Western white spruce which distinguish it from other woods (pp. 371–372).

On January 5, 1938, H. R. 9682, as amended by the Senate Finance Committee, was reported to the Senate, and the committee report (S. Rept. 1567, 75th Cong., 3d sess.) contained the following with respect to the provision in controversy:

The House bill exempted from the tax imposed upon lumber by Section 601 (c) (6) of the Revenue Act of 1932, northern white pine, Norway pine, Engelmann spruce, and western white pine. The Committee believes that this exemption is justified except as to Engelmann spruce * * * (pp. 43–44.)

The excise tax on the importation of lumber is changed by the House bill so as not to apply to Northern white pine, Norway pine, Engelmann's spruce, and Western white spruce. Your committee concurs in this change with one exception. It recommends that Engelmann's spruce be left subject to tax. * * * (p. 11.)

The debate in the Senate discloses little direct reference to the provision covering "Western white spruce," due possibly to the fact that most of the attention of the Senate to the section in question was addressed to the committee amendment striking "Engelmann spruce" from the bill as passed by the House.

Senator Murray of Montana, discussing the committee recommendation referred to, that "Engelmann spruce" be stricken from the bill, presented a statement in support of the committee's action, which was printed in full, and introduced the same in this fashion:

Mr. President * * * I have prepared a statement showing the necessity for eliminating Engelmann spruce from the provisions of the bill. * * * I should like to have incorporated in the RECORD in connection with my remarks, the statement in support of the committee's action on the matter. (Cong. Rec. vol. 83, pt. 5, p. 5039.)

The statement by Senator Murray, which was clearly and definitely before the Senate during its consideration of the provision before us, contains the following two pertinent paragraphs:

Western white spruce is the commercial designation in the United States of a particular type of lumber which is produced in Canada from trees which grow only in the Provinces of Manitoba, Saskatchewan, and Alberta. Western white spruce consists entirely of white spruce, with no admixture of any other species.

Western white spruce is easily distinguishable by the lumber trade from all other kinds of spruce. It is never free from knots, and the fiber of the wood around the knots is curly and intergrown with the knots. Its knots are small. In color it is "light yellow, with hardly distinguishable sapwood." It is lighter in weight than any other type of spruce, and by weight alone, therefore, is distinguishable from the other kinds of spruce.

It is inconceivable to us that Congress intended "Western white spruce" as a new species of lumber, christened in name with the passage of the Revenue Act of 1938, without the congressional debates not saying so, instead of an almost unbroken chain of statements, both in the House and in the Senate, to the contrary.

As the bill finally became law, the provision in question, read as follows:

SEC. 704. AMENDMENTS TO TAX ON LUMBER

\*       \*       \*       \*       \*       \*       \*

(c) Section 601 (c) (6) of the Revenue Act of 1932 is further amended by inserting after the amendment made by subsection (a) of this section the following: "The tax imposed by this paragraph shall not apply to lumber of Northern white Pine (pinus strobus), Norway pine (pinus resinosa), and Western white spruce."

From the foregoing, we think it is clear that Congress considered the term "Western white spruce" to be a designation of a particular kind of lumber obtained from trees known by that name and grown in Canada, not only in the Provinces of Manitoba, Saskatchewan, and Alberta, but also elsewhere.

It follows from the foregoing that the term "Western white spruce" as used in the Revenue Act and in the Internal Revenue Code, *supra*, is an *eo nomine* designation. The general rule in the case of such designations is that the meaning thereof, and hence their scope, must be determined as of the effective date of the tariff act in which it is found. *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. 472, T. D. 44762, citing *Rossman* v. *Hedden*, 145 U. S. 561. This rule is subject to certain exceptions, one being the case of goods not known to commerce at the time of the passage of the tariff act but which subsequently become known under the tariff designation. In that case it has been held that the tariff designation applies to such goods on the theory that tariff statutes are made for the future as well as for the present and will embrace subsequent merchandise the existence of which was not known to commerce prior to the effective date of the tariff statute. *United States* v. *Paul G. Downing et al.*, 16 Ct. Cust. Appls. 556, T. D. 43294, and cases cited therein.

However, the situation as we find it in the case at bar does not come within the aforementioned exception. The record shows that lumber such as that in issue *was* known to commerce at and prior to the passage of the Revenue Act of 1938. The burden was on the plaintiff, therefore, to establish under the general rule that at that time lumber such as that involved herein was known as "Western white spruce."

On this point three witnesses testified for the plaintiff, and three for the defendant, all of these witnesses being men of considerable experience in the lumber business, including the buying and selling of spruce grown in Canada.

The first of plaintiff's witnesses was James A. Ryan, who stated that from 1928 to 1939 he had been in charge of the sawmills and the manufacturing and shipping of lumber for the exporter of the lumber in issue, and had direct supervision over the shipments of the lumber in this case. Mr. Ryan testified that the merchandise at bar was invoiced as "Western white spruce" because "it is grown in the western part of Canada." On cross-examination he testified that prior to July 1, 1938, the effective date of the Revenue Act of 1938 insofar as it applied to lumber, he had never sold any merchandise as Western white spruce, and, in fact, had never heard of the term up to that time. Subsequent to that date, he said, he sold under the term "Western white spruce" lumber identical to that he had previously sold under the name "white spruce."

Guy F. McDonald, with 33 years' experience in the buying and selling of lumber, including spruce from Canada, testified on direct examination that as far back as 1931 he sold spruce grown in Manitoba and Ontario as Canadian spruce, white spruce, Western white spruce, and box spruce, but on cross-examination he modified that statement by saying that although prior to July 1, 1938, the term "Western white spruce" may have been occasionally used, he was unable to recall that "we ever used that term" during that time. However, the lumber shipped since that time under the name Western white spruce was, he said, from the same operations and was the same as that formerly shipped under the names Canadian spruce, box spruce, and white spruce.

Plaintiff's final witness was Charles Mattson, a lumber commission salesman with 51 years' experience in the lumber business, 28 of which included handling white spruce from Manitoba, Ontario, and domestic sources. Mr. Mattson testified that he never received an order and never sold any spruce as Western white spruce, although he had heard the term "a little in the last few years."

The first of defendant's witnesses was Edwin R. Safford, Jr., a wholesale manufacturer of lumber, with some 47 years' experience in the lumber business. He testified that he had been selling Western

white spruce in the wholesale lumber trade of the United States since 1933 and that in that trade the term referred to spruce the product of Manitoba, Saskatchewan, Alberta, and the northern interior of British Columbia. While he had not in recent years purchased or sold Ontario spruce, he had never directly heard of sales of such spruce as Western white spruce.

On cross-examination it was brought out that on March 31, 1939, in a letter written to a firm of customhouse brokers at Rouses Point, N. Y., he expressed the opinion, evidently in answer to an inquiry, that "it seems reasonable that White Spruce grown and manufactured into lumber in extreme Western Ontario, the territory directly east of Manitoba, is entitled to tax exemption provided for Western White Spruce." The witness explained that he had no personal acquaintance with the territory or the lumber, and that the foregoing was merely his opinion at the time.

Charles Kennedy, in charge of buying and selling for a wholesale lumber company, with experience of some 28 years in the business, testified that he had personally sold Western white spruce in the United States for 12 to 14 years, being 7 to 9 years prior to July 1, 1938. In his experience it related to the spruce emanating from the Provinces of Alberta, Saskatchewan, and Manitoba, and he had had no experience with white spruce from British Columbia. Ontario spruce, he said, was bought as eastern Canadian spruce and sold as spruce, and he had never heard of it being bought and sold as Western white spruce.

On cross-examination the witness admitted that as a practical lumberman he believed the white spruce growing along the western border of Ontario could be used for the same purposes as the white spruce growing along the eastern border of Manitoba, but he re-iterated that the white spruce lumber from Ontario was classed in the trade as eastern spruce, while the white spruce lumber from Manitoba was classed as Western white spruce.

The last witness was James B. Stricker, sales manager for a wholesale lumber company, with 24 years' experience in the business. Mr. Stricker testified that from the latter part of 1937 to July 1, 1938, he sold as Western white spruce lumber produced by the mills in Manitoba, Saskatchewan, Alberta, and parts of British Columbia, and that it was the industrial practice to sell such lumber under that name. Prior to July 1, 1938, he said, he never heard of any white spruce coming out of Ontario having been sold as Western white spruce, and although since that time his company had received shipments from Ontario invoiced as Western white spruce, he had not sold such lumber to the trade under that name.

To recapitulate, two of plaintiff's three witnesses who testified on the

subject stated that they never sold lumber such as that involved herein prior to 1938 as Western white spruce, and the third witness frankly said he had never sold anything as Western white spruce. Nothing contained in the testimony offered on behalf of the defendant could be said to affect favorably the burden of the plaintiff.

Counsel for the plaintiff argues that the lumber in question should be accorded the benefit of the exemption on the ground that it is the same class or kind as Manitoba white spruce, which, according to the record herein, has been permitted free entry by the customs officials in some instances. The argument on this point is based upon the following facts developed in the record: (1) The testimony of Jesse A. Rose, acting appraiser and deputy collector at the port of Ranier, Minn., and correspondence between the collector at the headquarters port of Duluth and the Commissioner of Customs found in the official papers and in exhibit 2 in this case, establishing that white spruce grown and produced in the Province of Manitoba is in some instances, by the customs authorities administering the statute, accorded free entry under the exemption for Western white spruce, and (2) the testimony of Dr. Rees, as well as that of Frank Ziobroski and F. J. Chapman, taken under commission issued out of this court, and the exhibits in connection therewith, establishing that the instant merchandise is botanically and structurally the same as the white spruce grown and produced in Manitoba and that there is no practical difference between the two woods. It is also contended by counsel for the plaintiff that witnesses for both plaintiff and defendant were in agreement that the imported white spruce could be used interchangeably with Manitoba white spruce.

We think Dr. Rees' testimony concerning the similarity or identity of the samples he examined must be considered in the light of his testimony and admissions on cross-examination and under examination by the court that all white spruce, no matter where grown throughout Canada, is absolutely identical, botanically and structurally (R. p. 43), and that the exhibits he examined had "all the structural characteristics of spruce" (R. p. 46), but he could not, from his examination, say what kind of spruce they were (R. p. 45).

If plaintiff's conclusion, that all lumber which is botanically and structurally the same as Manitoba white spruce should be accorded free entry, is correct, it would follow that all white spruce from Canada, which by Dr. Rees' testimony is shown to be the same botanically and structurally, should be permitted free entry. But in this situation there would seem to be no reason for Congress' inserting the word "Western" in the language of the statute, and it would be presumed to have thereby done a useless and vain thing. We can make no such presumption.

At any rate, we do not see how the acts of customs officials in certain instances with respect to Manitoba white spruce can be relied upon as controlling the decision herein. There is nothing to indicate that such acts were in accordance with the law, and in view of the legislative history of the provision it would appear that they were contrary to the intent of the Congress.

No question of commercial designation arises here. We have found that the term "Western white spruce" is ambiguous, and that resort to the legislative history of the provision is proper in order to determine just what Congress meant in the use of the term. If as the result of our review of the legislative history we have found what Congress intended to cover by the term "Western white spruce" there is no need further to resort to the rule of commercial designation, which is merely a rule of statutory construction. In any event, having ascertained the legislative intent, it would control over a rule of statutory construction.

On this record we are satisfied that our judgment must be in favor of the defendant, and the protest is overruled accordingly.

### DISSENTING OPINION

OLIVER, Presiding Judge: I regretfully dissent from the conclusion reached by my associates. I am of opinion that the protest herein should be sustained. The master rule of construction is to ascertain the intent of Congress. That intent on the present record indicates that western white spruce lumber produced in the Provinces of Manitoba, Saskatchewan, and Alberta is to be admitted free of duty and similar white spruce lumber whether or not grown in those provinces is also entitled to the benefit of this provision (sec. 3424 (a), Internal Revenue Code).

I am further of opinion that plaintiff has established by a fair preponderance of the evidence that white spruce grown in the above-named provinces is western white spruce and that the imported merchandise from Ontario is identical with and cannot be distinguished from the product grown in the adjoining Province of Manitoba. I find nothing in the record to support the contention that there is a tree known as western white spruce. There is no botanical distinction between white spruce and the so-called western white spruce. The legislative history establishes that the Congress originally sought to limit the provision for western white spruce to such lumber emanating from the named provinces. By striking from the final bill the limitation on western white spruce from Manitoba, Saskatchewan, and Alberta, Congress made it clear that western white spruce should be free of duty wherever found. As Congressman Vinson said as quoted in the majority opinion, "It is the thought of the committee

there should be no limitation as to the places where *white spruce* is grown." [Italics supplied.] Further, Congressman Vinson stated, as quoted in part in the majority opinion:

We had before us evidence that western white spruce was a particular kind. I may say the information the committee had was that western white spruce was grown only in Manitoba, Saskatchewan, or Alberta. Of course, this information came to us from gentlemen on the other side of the aisle, and it may be we should have scrutinized it more closely. However, we took it at 100 percent value. Then we found out that western white spruce is grown in other places, so we are trying to make this provision general in application.

I am further of opinion that plaintiff's samples, referred to in exhibit 9, invoiced as "Manitoba spruce (Western white spruce)," exported from Manitoba, have been satisfactorily identified as western white spruce. It further appears from the record that these samples are in all material respects identical with, and indistinguishable from, the imported merchandise. It seems clear from this record that an expert cannot distinguish between a piece of white spruce from Ontario and a sample of so-called western white spruce from Manitoba, or, to quote from the prevailing opinion herein:

* * * Hence it may be said to be logical, and, indeed, there is evidence in the record before us that it is a fact, that the *picea glauca* grown in the western part of Ontario (the locality in which the lumber at bar originated) and that grown in the eastern part of Manitoba *are identical in all respects, physically, structurally, and in use.* [Italics partially supplied.]

The plaintiff's witnesses testified that the imported lumber is western white spruce and it was so invoiced.

I am satisfied from this record and the legislative history that Congress intended to exempt from this duty all Canadian western white spruce of the same character as that originating in the three-named provinces; that the lumber in question is of such character, and that the protest should be sustained.