VICTOR W. DAVIS, JR., ADMINISTRATOR, ETC. *v.* UNITED STATES (No. 4552)[1]

[1] C. A. D. 874.

United States Court of Customs and Patent Appeals, December 2, 1947

*Barnes, Richardson & Colburn* (*Albert MacC. Barnes* and *Joseph Schwartz* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument October 9, 1947, by Mr. Barnes and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

In September 1939, appellant's intestate, V. W. Davis, imported at Ranier, Minn., a subport within the customs district of Duluth, certain lumber invoiced as "Western white spruce." The merchandise was shipped by the Keewatin Lumber Co., Ltd., located in Canada at Kenora, Ontario, The shipments were made from Hudson, Ontario.

The Collector of Customs assessed the imported merchandise with duty at the rate of 50 cents per thousand feet pursuant to paragraph 401 of the Tariff Act of 1930 as modified by trade agreements. That assessment is not in issue. In addition to the customs duty, an excise tax of $1.50 per thousand board feet was levied against the merchandise under section 704 (c) of the Internal Revenue Act of 1938. That law appears in the Internal Revenue Code, section 3424 (53 Stat., Part 1, 415) and reads as follows:

SEC. 3424. Lumber.

(a) Lumber, rough, or planed or dressed on one or more sides, except flooring made of maple (except Japanese maple), birch, and beech, $3 per thousand feet, board measure; but the tax on the articles described in this section shall apply only with respect to the importation of such articles. The tax imposed by this subsection shall not apply to lumber of Northern white pine (pinus strobus), Norway pine (pinus resinosa), and Western white spruce.

The above rate was modified by the following provision of the Trade Agreement with Canada (T. D. 49752) reading as follows:

| Revenue Act of 1932, as amended | Description of article | Rate of import tax |
| --- | --- | --- |
| Sec. 601 (c) (6)------------ | Lumber, including sawed timber, rough, or planed or dressed on one or more sides, except flooring made of maple, birch, and beech, and except lumber and timber of Northern white pine (pinus strobus), Norway pine (pinus resinosa), Western white spruce, balsa, teak, cedar commercially known as Spanish cedar, lignum-vitae, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, Japanese white oak, or Japanese maple. | $1.50 per thousand feet board measure. |

The importer protested the action of the collector with respect to the board measurement of the lumber and also claimed that the imported merchandise is "Western white spruce," and, therefore, exempt

from said excise tax. The only issue before the trial court was the claimed impropriety of assessing the importation under the Revenue Act.

The United States Customs Court, First Division, one judge dissenting, overruled the protest, and from the judgment this appeal was taken. Subsequent to the judgment, the administrator of the estate of the importer was substituted in place and stead of the importer who had died subsequent to the trial and prior to the date of the judgment.

The only question before us is whether the imported merchandise is "Western white spruce" as that expression is found in the statute. Appellant contends that the involved lumber is within the common meaning of the term "Western white spruce"; that it is identical with white spruce lumber from the Canadian province of Manitoba which is classified as "Western white spruce"; that the legislative history demonstrates that the Congress did not intend to impose any geographical limitation on where "Western white spruce" is grown, and that the classification of the merchandise violates the "most-favored-nation" clause of the Reciprocal Trade Agreements Act. Appellee contends that the imported lumber was not either commercially or commonly known as "Western white spruce" at the time the revenue statute became effective, and in all other respects traverses the contentions of appellant.

It is clear that under the provisions of the Internal Revenue Code a tax must be levied on all imported lumber except that which is specifically exempted. The action of the collector here established the presumption that the imported merchandise is in fact not within the scope of the exception, and, therefore, not "Western white spruce." Consequently, it was the burden of appellant to establish that, as a matter of fact, the importation is "Western white spruce."

It appears that the customs officials classified the lumber by reason of instructions from the Commissioner of Customs, dated April 24, 1939, in which among other things it was stated that "Western white spruce" is limited for customs purposes to that which is grown in Manitoba and other more westerly provinces of Canada, and that it does not include white spruce grown in Ontario.

Clearly it appears that, prior to and at the time of the passage of the Revenue Act of 1938, there was a commodity in commerce known as "Western white spruce." That fact is demonstrated by the record as well as by the legislative history of the act found in the prevailing opinion of the trial court (C. D. 1005), to which attention is invited. It would unduly lengthen this opinion, and is unnecessary, to fully review that history here. It is sufficient to state that the original bill provided for exemption from revenue tax, among other imported lumber, "Western white spruce" grown in Manitoba, Saskatchewan, or

Alberta. After considerable debate, the geographical limitation, as to where such spruce originated, was eliminated. There can be no doubt that it was the intention of Congress to admit what was then understood to be "Western white spruce," free of the tax regardless as to where it was grown. However, in order to make the exemption applicable, a protesting importer must prove that his imported spruce is of the kind Congress understood to be "Western white spruce."

An assistant professor of forestry of the University of Minnesota, a teacher of wood technology, wood structure and identification, and who had also worked in the field of dendrology (the identification of trees and shrubs), stated that he had tested samples of the imported merchandise and samples of the white spruce lumber from Manitoba. He subjected all the samples to the same tests and said that, as a result thereof, the crushing strength and bending strength of all the samples were the same. He also produced certain exhibits, consisting of photomicrographs of the samples, showing the tangential, radial, and cross section structures, from which he stated he concluded that the samples he tested are exactly alike in structure. He further testified that he had made a test to determine the specific gravity of the samples, but oddly enough, he was not asked as to whether or not there was any difference in the specific gravity of the samples. Information concerning the specific gravity of the tests, in our opinion, might have been important. The witness stated that he was acquainted with white spruce, and recognized that the wood upon which he made his tests was of that variety. He stated he did not know any wood, either botanically or structurally, as "Western white spruce," and declared he did not recognize any such classification. His opinion was that there is no such thing as "Western white spruce," and that all white spruce is alike. He stated that white spruce trees grow across Canada, from Labrador to the Bering Strait. He conceded that the specific gravity of any wood is affected by the rate of growth which, of course, is controlled by soil and climatic conditions.

Three other witnesses of long experience in the lumber business, who had bought and sold Canadian grown spruce in great quantities, testified for appellant. Their testimony, pertinent to the issue, may be summed up by stating that they were not acquainted with any spruce bought and sold as "Western white spruce" in 1938 or prior thereto. They did not in any way exclude the fact that there was such a commodity as "Western white spruce" known to the lumber industry at the time of or prior to the enactment of the Revenue Act. There is testimony that the imported merchandise "Can be properly called 'Western white spruce'"; that "It could be considered to be 'Western white spruce'"; and one witness stated "As far as I am concerned all white spruce is the same"; but there is nothing in the record to establish that the imported merchandise is what was evi-

dently intended by the Congress to be regarded as "Western white spruce."

Witnesses from the lumber industry appeared in support of appellee's contentions. They were men of long experience in the buying and selling of spruce grown in Canada. From their testimony, it appears that imported lumber known as "Western white spruce" had been bought and sold in the trade for a long period of time prior to the passage of the Revenue Act, and that the white spruce grown in Ontario was bought and sold as such but never as "Western white spruce." It will be observed that these witnesses, qualified to testify in that regard, agree that white spruce from Ontario had not been sold as "Western white spruce" prior to 1938.

It appears that the practical difference between "Western white spruce" and other white spruce is that the latter grows more slowly than the former, and, therefore, is heavier and more suitable for use as in ladder stock; while the "Western white spruce" is a faster growth and consequently lighter in weight and more suitable for use in the manufacture of boxes, sheathing, or the like. "Western white spruce" is lighter than other white spruce by from 100 to 200 pounds per thousand feet. There is nothing in the record, as we have heretofore noted, to indicate what, if any, difference existed in the weight of Manitoba "Western white spruce" and that of the imported merchandise. Since such evidence was available, it seems that it should have been disclosed.

In the prevailing opinion below, the court, after having considered the legislative history of the involved act, concluded:

* * * that Congress considered the term "Western white spruce" to be a designation of a particular kind of lumber obtained from trees known by that name and grown in Canada, not only in the Provinces of Manitoba, Saskatchewan, and Alberta, but also elsewhere.

Treating the term as an *eo nomine* designation, the court applied the general rule that the scope of such designation must be determined as of the effective date of the tariff act in which it appears, citing *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762, in which is cited the case of *Rossman* v. *Hedden*, 145 U. S. 561. The court noted that the facts herein do not bring the case within the well known exceptions to that general rule, citing the case of *United States* v. *Paul G. Downing et al.*, 16 Ct. Cust. Appls. 556, T. D. 43294.

We agree with the majority holding below that the imported lumber was known in trade and commerce prior to the passage of the Revenue Act of 1938, and, therefore, it is not within the exception to the said general rule, and that it was appellant's burden to establish under the general rule that, at the time of the passage of the involved act, lumber, such as is here involved, was known as "Western white spruce."

Because, in our opinion, it is clear that the Congress singled out "Western white spruce" from the general class of white spruce, which grows in Canada from Labrador to the Bering Strait, and intended that "Western white spruce," alone of the white spruce species, should be exempt from the tax, we cannot hold that appellant has proved a *prima facie* case. If we were to agree with the theory of the wood expert, certainly we would have to hold that Congress, in using the expression "Western white spruce," had done, as was observed by the court below, a vain and useless thing.

In view of what has been said, we are of opinion that the majority of the court below did not err, and, therefore, the judgment appealed from should be and is *affirmed*.

---

BLAND, Judge, sat during the argument of this case, but resigned before the opinion was prepared.