(C.D. 2550)

ARNART IMPORTS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 28, 1965)

*Siegel, Mandell & Davidson* (*David Serko* and *Murray Sklaroff* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: These two cases were consolidated for the purpose of trial. They both have to do with certain decorated earthenware articles, imported from Japan, which the collector assessed with duty on the basis of two pieces for each article.

There is no dispute as to classification. These articles are dutiable under paragraph 211, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade (T.D. 53865), at 25 percent ad valorem and 10 cents per dozen pieces. They were so assessed. The protest claim is that, under that classification, each article is dutiable as one piece, not as two pieces.

Plaintiff's exhibit 1 was conceded by defendant to be representative of the merchandise in dispute. It includes a figure of a woman who is guiding, with her left hand, a baby carriage with baby. All of the foregoing are in one earthenware piece. There are two earthenware figures of poodles, each with a metal chain around its neck, simulating a leash, and the ends of these chains are looped over the woman's right hand. These figures were all assessed as one piece, even though the poodles are separate earthenware figures. As imported there was also a parasol, which counsel stipulated is not of earthenware. This parasol has a stick extending down from the center of the parasol, on the under side. It was separate from the figure group. The stick was

designed to be inserted in a hole in the woman's right hand. When so inserted, subsequent to importation, the woman appears to be under the shade of an open parasol. This parasol was counted by the collector as a second piece, and specific duty computed accordingly.

Two witnesses testified for plaintiff. Besides exhibit 1, representative of the merchandise in controversy, plaintiff introduced into evidence three other articles with respect to which plaintiff's witnesses testified as to sales and trade practices.

Exhibit 2 was described as "Little Miss Perfume Bottle." There is a decorative container (evidently intended for perfume) and a separate stopper which fits into the base or container. Together they simulate a girl in a pink dress, who is holding in her hands a blue hat.

Exhibit 3 is described as a "Dutch Girl Trinklet [sic] Box" in two parts, both hollow, an upper part and a lower part. Together they represent a girl in Dutch costume.

Exhibit 4 is described as a receptacle for cookies or candy or buttons. It also is in two parts (both hollow), a body and a head. Together they represent an upright pig.

Mr. Arthur Tamchin, testifying for plaintiff, identified himself as plaintiff's president. Plaintiff, he said, is engaged in the importation and distribution of gift merchandise, including objects of art, utility merchandise, and decorative accessories for the home made of porcelain, ceramic, metal, glass, wood, or of a combination of components. Mr. Tamchin said he had been in what he called the giftware business for 30 years.

As to exhibit 1, the witness said that this is an article which was suggested to his brother and himself by an importation from France; that they had made approximately 50 variations of the article, a woman pushing a baby carriage, with poodles, and carrying an umbrella; that they experienced so much breakage that they decided to separate the article, both to avoid breakage and to keep cubic content low enough so that the article could be sold as a dollar item. These were the only reasons for having the article in two parts.

As to cubic content, the witness said that attachment of the parasol increased shipping costs so seriously as to affect distribution as an item for retail sale at one dollar.

His corporation offers figures like exhibit 1, per dozen pieces, at a price range that varies according to the category of the buyer, such as jobbers, department stores, variety, and gift stores. The entire article, including the parasol, is counted as a single piece in plaintiff's price quotations, which are at a rate per dozen pieces.

Testimony both of Mr. Tamchin and of Mr. Benjamin Francis Allen, plaintiff's sales manager, was largely as to trade practices, pricelists, etc., all to the effect that goods such as the articles repre-

sented by exhibits 1 to 4 were quoted, offered, and sold in lots of a dozen pieces, and that this meant lots of a dozen articles.

Defendant introduced no evidence, confining itself to cross-examination of plaintiff's witnesses and a good many interjections and objections.

It appears to be plaintiff's chief argument that, in ascertaining the number of pieces on which the specific duty under modified paragraph 211 is to be computed, the practices of the trade and commerce in the particular merchandise are to be considered. From this premise, plaintiff seems to conclude that where the trade practice is, as here, to deal in an article as a single piece, even though physically it is in separate pieces, then for purposes of computing specific duty the article should be deemed a single piece. It is not, of course, quite so simple as that.

The proper query is: What did Congress intend by the term "piece" when it enacted the Tariff Act of 1930? The specific duty provision on earthenware, at a rate *per dozen pieces*, was a provision newly introduced in the 1930 act. It is not found in the 1922 act.

We had supposed, in view of the thoughtful and comprehensive opinion of our appeals court in *United States* v. *S. H. Kress & Co.*, 23 CCPA 90, T.D. 47764, that there no longer is room to doubt that Congress intended that each separate piece of an earthenware article is a "piece," which is to be counted as such for ascertainment of specific duties under paragraph 211.

The common meaning of piece is, of course, a single, separate part, as distinguished from the whole. Piece is often synonymous with part. However, it is commercial meaning which plaintiff asserts, and has sought to prove by testimony as to trade practices.

The rule is that commercial meaning has application only where it is shown that there is commercial meaning which is different from the common meaning of a term. This, however, is a rule of classification. *United States* v. *Allen Forwarding Co.*, 42 CCPA 33, C.A.D. 566; *Victor W. Davis, Jr., Administrator* v. *United States*, 16 Cust. Ct. 163, C.D. 1005, affirmed, *id.* v. *id.*, 35 CCPA 79, C.A.D. 374. Here we have no issue as to classification. But if, *arguendo*, commercial meaning might be deemed to have relevance to a non-classification tariff term, one describing the *quantum* basis of duty computation, the necessary inquiry would still be: what did Congress intend.

All those who testified at the Congressional hearings on the proposed specific duty provision agreed as to what the commercial practice was at that time and what were pieces that would become the basis of specific duty computation if the specific duty became law, as it did. Commercial practice for tariff purposes, if proved to be different from common meaning, is the commercial practice which was in effect

at the time of tariff enactment. *E. Dillingham, Inc., et al.* v. *United States*, 48 CCPA 46, C.A.D. 762; *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669; *Davies, Turner & Company* v. *United States*, 39 CCPA 76, C.A.D. 466.

The specific duty on earthenware, per dozen pieces, was not in the bill as reported by the Ways and Means Committee to the House of Representatives. It was inserted by amendment in the House, and was included in the bill as sent to the Senate. Hence, it is the hearings before the Finance Committee of the Senate that reveal the attitudes taken by those who testified.

Nowhere do we find any one asserting the position which plaintiff asserts, as to what are the number of pieces in earthenware articles that have multiple parts. To the contrary, whether testifying in support of the specific duty or opposing it, witnesses before the Senate Finance Committee, and the briefs filed there, all state an understanding that piece, as used in paragraph 211, means each of the separate parts, not the assembled article.

Testifying in opposition to the specific duty, in behalf of the China and Earthenware Group of the National Council of American Importers and Traders (Inc.), Mr. Julius Rosenfeld, of Lazarus & Rosenfeld, Inc. (and a lawyer), told the Finance Committee, *inter alia*, that a bottle and cork count as two pieces; that a mustard bottle with cover and spoon counts as three pieces. Hearings Before Subcommittee of the Senate Committee on Finance, Seventy-first Congress, on H.R. 2667, at page 252.

The brief filed for the Earthenware Group of the National Council of American Importers and Traders (Inc.) states:

* * * It is customary in the china and earthenware trade to count all separate pieces, and the rate applied on actual count consequently brings the duty out of all proportion to the value of the wares. Cups and saucers, covers to sugars, covered jugs and mustard pots, covered butter dishes, and many other articles are counted as two or more pieces, while they are sold by the dozen or gross in single units. [Senate Hearings, *supra*, at page 257.]

Many illustrations were given at the hearings to show the piece count for various articles. All show, as the commercial practice, the count of each of the separate parts of an article as a piece.

In the *Kress* case, *supra*, there were many different earthenware articles, including teapots, sugar bowls, cereal jars, cookie jars, flower pots, candy jars, juice extractors, tea sets, a figure of a clown with removable head, cheese sets, refrigerator sets, incense burners, among others. There were 35 representative exhibits.

The trial court held that Congress contemplated that the word "piece" should embrace each article as one piece, even though it was composed of two or more separate pieces. *S. H. Kress & Co. et al.* v. *United States*, 66 Treas. Dec. 764, T.D. 47418. This is substantially

the interpretation which plaintiff asserts as to the earthenware merchandise in litigation here.

The Government appealed from the decision of this court, and its position was argued by the then assistant attorney general, later Judge Jackson. In a unanimous opinion, the Court of Customs and Patent Appeals reversed our decision, holding that "when Congress, in paragraph 211, provided a tariff duty on 'articles' involving a counting of the 'pieces', it intended that each piece, even though it be a cover or a bottom, or a saucer unaccompanied by a cup, should be counted in making application of the '10 cents per dozen pieces' provision." *United States* v. *Kress, supra,* at pages 97, 98.

As to testimony showing a current trade practice that includes lids and covers in the term "pieces," our appeals court stated that it would not regard such testimony as controlling on the question of Congressional intent. Citing the testimony before the Senate Finance Committee, to which we have earlier referred, our appeals court found it obvious that "articles" and "pieces" were not used in a synonymous sense, in paragraph 211.

We followed this precedent in an earlier suit by this plaintiff as to salt and pepper shakers. We held that the specific duty is to be assessed on each separate piece of imported earthenware, including detachable tops. *Arnart Imports, Inc.* v. *United States,* 46 Cust. Ct. 449, Abstract 65534.

Plaintiff, in its brief, argues that because there is no practice here of importing parts to replace breakage, the facts differ basically from the facts in *Kress, supra;* and that this difference destroys the value of *Kress* as a precedent on the issue that is before us, namely, what did Congress intend by the word "pieces" as used in paragraph 211.

We do not so read *Kress.* Defendant adduced testimony that tops, bottoms, and other similar parts of the earthenware articles there in litigation were imported for replacement purposes. What the appeals court said, was that *if* so imported for replacement purposes "it is difficult to understand how a fair and uniform practice could be brought about by making a distinction between earthenware imported in sets and earthenware imported on the open stock plan, as is made by appellees and the trial court, since it would seem to follow that the collector would be required to exact the payment of a duty from the importer of a set which would not be exacted from the importer of open stock, although both importations might include the same kind of articles. We cannot agree that Congress meant one rule to apply to sets and another to open stock." *Kress, supra,* at page 95.

We agree. But these are not the facts here. To paraphrase the above-quoted conclusion, we cannot agree that Congress meant piece to mean one thing when a breakage replacement is available and

another thing when it is not available. There is not the slightest support, either in the clear language of the statute itself or in the legislative history, for so strained and artificial a construction.

The protests are overruled. Judgment will be entered accordingly.