(C. D. 599)

W. J. GREEN v. UNITED STATES

United States Customs Court, Second Division

(Decided March 4, 1942)

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: This is a suit brought by plaintiff against the United States to determine the proper dutiable classification of the imported merchandise. The involved merchandise is invoiced as flax waste for paper making, and was classified for duty as flax noils under paragraph 1001 of the Tariff Act of 1930, at 1 cent per pound, and is claimed to be free of duty under paragraph 1750 of said act, which reads as follows:

PAR. 1750. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste (including jute, hemp, and flax waste), shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

While no objection was made to the sufficiency of the protest herein either before or during the trial, counsel for the Government, in his

brief, has made a motion for the dismissal of the protest for want of sufficiency in failing to indicate that the involved merchandise was claimed free of duty under paragraph 1750 of said act as flax waste used chiefly for paper making at the time of importation. The protest, so far as pertinent, claims that the merchandise assessed for duty as flax noils at 1 cent per pound is free of duty under paragraph 1750 of the Tariff Act of 1930. It is invoiced as "flax waste," and was entered by the plaintiff as "flax waste for paper-making." Whether so chiefly used at the time of importation or at the time of the passage of the tariff act would seem to be a matter of evidence and not a necessary allegation of the protest claim. In our opinion the protest is very definite, and the motion of counsel for the Government for the dismissal thereof is therefore denied hereby, with an exception to the defendant.

William J. Green, president of the plaintiff company, testified that his company handles all kinds of fibers, practically all paper mill supplies, such as new and old rags, bagging, various kinds of textile waste, flax, cotton, jute, hemp, and sometimes wool waste. He stated that while his company was only organized in 1937, he was in this business since 1908; that he has also dealt in noils, but not since 1908, although he has had occasion to see other people's importations, and has had noils offered to them from time to time (R. 4). He stated that collective exhibit 1 represents the merchandise under protest; that he personally purchased the merchandise in question in Russia in December, 1936; that he sold the merchandise to two paper mills that manufacture high-grade paper; that he made other sales of this same material that he imported from the same source of supply in Russia; that from 1936 to the end of 1940 he sold around 1,650 tons to paper mills. The witness stated further that the imported merchandise was not available in this country prior to 1936, i. e., not in the condition as imported; that it was in a condition where it had more shive, but was not available in its present condition until 1936; that shive is straw that comes from the flax plant and is naturally present in flax. As to the nonavailability of the imported merchandise prior to 1936, the witness testified as follows:

Q. Have you made an investigation to determine that?—A. Yes; I know it was not available in this condition. I know it was due to the invention of special machinery that made it possible and other circumstances thereafter which made it possible to produce this type of material. Ordinarily, it would not be economically feasible or practical, I should say, to produce this type of material.

Q. Is it at present in a clean condition?—A. Yes. I want to say that everybody couldn't operate a plant at all and produce that material.

Q. Why?—A. It would not be economical to do it.

Q. Why?—A. Well, the volume of material available for working is not there and the machinery is very expensive.

Q. Except in what locality?—A. Well, of course they can do it in Russia where everything belongs to one authority, where they have just one organization and they don't have the business competition.

Q. Do they have a large volume of this flax material there?—A. Yes; they do. Russia is the largest flax producing country in the world. It produced before the war in excess of 80 per cent of all the flax produced during a year, and they have a very large quantity of waste from the flax.

Q. This commodity, you say, was not available in the markets of this country prior to 1936. What was the material prior to that time?—A. It had straw in it; the straw was prevalent.

Q. Was it otherwise the same?—A. Well, it was practically the same. Of course, it had not been cleaned and perhaps it didn't look as uniform, but it was the same material. (R. 12/13)

The witness continued that he has dealt in noils since 1936, but did not remember having dealt in them before, but had known about them prior to that time. When shown collective exhibit 1 he stated that they positively were not noils; that said exhibit does not vary as much as noils in the length of the staple; that the staple length is more uniform; also that the presence of shive is not as great as it would be in ordinary noils, and that, in addition to that, the shive in the said exhibit is more evenly or uniformly distributed, whereas in noils the shive is in bunches in one place, while in this flax waste the fibers are quite free; also that the present material doesn't have the nubs or clumps in it that are always prevalent in noils (R. 14/16). The witness then produced a sample of Belgian noils that he bought from a dealer in this country, which was marked illustrative exhibit A, and drew attention to the nubs or clumps of fibers scattered throughout the sample, which he said were always present in noils. The witness stated further that he is the largest importer and dealer of merchandise like collective exhibit 1 in this country, and imported more than all other importers put together, and that the chief use of such merchandise throughout the period of these importations, from 1936 to 1940, has been overwhelmingly for paper making (R. 23); that he sold some small quantities of the merchandise for textile purposes, and that his sales for paper making have been five times as many as for textile purposes, and that the bulk was for paper mills.

Several other witnesses, purchasing agents of well-known paper manufacturing companies, testified on behalf of the plaintiff. From their testimony it appears that they either bought or imported merchandise like collective exhibit 1 from 1937 up to and during 1940; that it differed from flax noils in that flax noils had longer fibers and contained more nubs; that merchandise such as collective exhibit 1 was not known to them before that time; that it is regarded as a waste; and that the same was used by them for making high grade paper, cigarette paper, and money paper for the United States Government.

The plaintiff also produced as a witness Timothy L. McCarthy, superintendent of the Meredith Linen Mills, manufacturers of linen towels and crashes. He stated that he purchased 107 tons of flax waste like that here involved from the plaintiff company in the latter part of 1939 because of a shortage of flax noils from Belgium, England, and Ireland; that they bought it for the purpose of blending it with a better quality of flax noils or with longer material that they had on hand, to produce a linen crash and flax towels, but that it was not satisfactory or commercially practical for their type or standard of quality of flax towels.

The plaintiff's testimony, briefly summarized, is to the effect that merchandise of the kind and character here in issue was not known or dealt in in the markets of this country before the time of the present importation in 1936; that it is not the same as flax noils, which are of longer fibers and full of nubs; that it is a flax waste used chiefly in this country for paper making. Such facts are not contradicted by any testimony of the Government. Counsel for the Government does contend, however, that as it has not been shown that the chief use of the flax waste like that in question was a paper stock at the time of the enactment of the present Tariff Act of 1930, the claim of the plaintiff cannot be sustained. In support of this view counsel for the defendant cites in his brief the recent decision of our appellate court in *United States* v. *William Steck & Co., Inc.,* (28 C. C. P. A. 187, C. A. D. 144) in which certain flax waste had been assessed for duty as flax noils under said paragraph 1001 of said act of 1930, and was claimed to be free of duty as flax waste under said paragraph 1750, as being chiefly used for paper stock. In sustaining the claim of the plaintiff the court used the following language:

> Notwithstanding the dangers that might be encountered in cases similar to the one at bar, we are constrained to hold and do hold that the evidence of record satisfactorily shows that the entire 149 bales were not the character of flax noils Congress had in mind when it enacted said paragraph 1001, but that merchandise of the class of that at bar has, at no time since long prior to the passage of the Tariff Act of 1930, been fit for or used for any purpose other than that of paper making, and therefore the instant merchandise should have been classified free of duty under paragraph 1750 as paper stock.

It must here be borne in mind, however, that the foregoing decision had reference to a class of flax waste that was known and dealt in in the commerce of this country at and before the time of the passage of the present tariff act. In the present instance it has been shown without contradiction that merchandise of the particular kind and character of that under consideration was not known or dealt in in the markets of this country before 1936. The case of *Steck & Co.,*

*supra,* is therefore not controlling on the issue herein. On the other hand plaintiff relies on the decisions of the courts holding that tariff acts are intended to cover merchandise coming into existence after the passage of the tariff act as well as before. As to merchandise of a kind or class in existence at the time of the passage of the Tariff Act, recent decisions of our appellate court are quite uniform in holding that in determining the meaning of an *eo nomine* designation, which meaning is determined by its use, that meaning must be determined in accordance with its proven chief use on and prior to the date when the language which is being interpreted was used by Congress. *United States* v. *Tower & Sons,* 26 C. C. P. A. 1, T. D. 49534, and cases cited therein.

As the kind or character of the merchandise represented by the instant merchandise was not known in the trade of the United States nor in existence at the time of the passage of the tariff act, and only appeared on the market in 1936, the sole question presented for our decision is whether the principle of interpretation in the *Tower* case, *supra,* is applicable in the present case, or whether the case comes within the principle of the cases relied on by the plaintiff.

If flax waste or paper stock, within the meaning of paragraph 1750 of the Tariff Act of 1930, is to be regarded as an *eo nomine* designation by use, which it seems to be, we know of no decision so far that requires proof of chief use of the article as of the date of the tariff act when such commodity was not known or dealt in in the markets of this country at the time of the passage of the tariff act. Obviously, such rule would require proof of a fact which is impossible of proof, and under such circumstances the only logical and reasonable rule to apply is to make the chief use of the merchandise at the time of importation the controlling factor.

Such rule, we think is not inconsistent with the case of *United States* v. *Georgia Pulp & Paper Mfg. Co.,* 3 Ct. Cust. Appls. 410, T. D. 32998. In that case the merchandise consisted of large, power-driven machines containing a mechanism for revolving logs while the bark on them was cut away with fixed knives. They were assessed for duty at 45 per centum ad valorem under paragraph 199 of the act of 1909, as articles not specially provided for, composed wholly or in part of iron, etc., and were claimed to be dutiable at 30 per centum under paragraph 197 of said act, as "machine tools." The testimony showed that at the time of the enactment of the Tariff Act of 1909 "machine tools" had taken on an established meaning in commerce that was general, uniform, and definite, and that woodworking machines did not fall within the commercial designation of "machine tools." In holding the merchandise

·dutiable as articles wholly or in part of metal not specially provided for under paragraph 199 of said act of 1909, the court stated:

As to merchandise the subject of trade at the time the statute was enacted, the evidence of commercial designation must relate to the designation of that merchandise in the trade and commerce of the country at and before the enactment of the statute, but tariff laws are made for the future as well as for the present, and if the imported merchandise was not in existence or was not known to commerce prior to the enactment of the law, but subsequently becomes so, then an applicable commercial designation in use at the time the statute is enacted reaches out and embraces such subsequent merchandise. *Pickhardt* v. *Merritt* (132 U. S. 252, 257); *Newman* v. *Arthur* (109 U. S. 132, 138).

In *Sheldon & Co.* v. *United States*, 4 Ct. Cust. Appls. 42, T. D. .33265, the court again stated:

Tariff statutes are made for the future as well as for the present, and an applicable commercial designation used therein reaches out and embraces subsequent merchandise, the existence of which may not be known to commerce prior to the enactment of a given tariff law. *Pickhardt* v. *Merritt* (132 U. S., 252); *Newman* v. *Arthur* (109 U. S., 132); *United States* v. *Georgia Pulp & Paper Manufacturing Co.* (3 Ct. Cust. Appls. 410; T. D. 32998).

The *Sheldon* case was cited with approval by the same court in *United States* v. *Hudson Forwarding & Shipping Co.*, 14 id. 188, T. D. 41700, wherein it was held that leather which was practically all used for making shoes during the period of the involved importations, though not so used at the time of the enactment of the Tariff Act of 1922, was not dutiable as "leather other than shoe leather," under paragraph 1431 of the act of 1922, but was included in the free list provision for "leather not specially provided for" (paragraph 1606).

In the case of *United States* v. *Paul G. Downing*, 16 Ct. Cust. Appls. 556, T. D. 43294, it was held that the term "shoe leather" includes ·such new designs of imported leathers as were not in existence at the time of the enactment of the Tariff Act of 1922. The court therein ·stated:

It is well established that tariff statutes are made for the future as well as for the present and that the statutory term "shoe leather" reaches out and embraces subsequent merchandise, the existence of which was not known to commerce prior to the effective date of the tariff act of 1922.

Note also *Smillie & Co.* v. *United States*, 12 id. 365, T. D. 40520, and the *Chicago Mica Co. et al.* v. *United States*, 21 C. C. P. A. 401, T. D. 46927, to the same effect.

As already stated hereinbefore, the testimony in the present instance shows that the merchandise here in question in the condition as imported was not known or dealt in in the commerce of this country at the time of the passage of the Tariff Act of 1930; that it is not flax

noils, but that it is a flax waste which was used chiefly for the manufacture of paper at the time of importation.

On the record before us, and on authority of the cases cited, *supra,* we hold that the imported merchandise is therefore properly free of duty under paragraph 1750 of the Tariff Act of 1930, as flax waste used chiefly for paper making.

In other words, as proof of chief use of the merchandise at the time of the passage of the present tariff act was not possible, the only reasonable and logical alternative is to accept proof of chief use thereof at the time of importation as controlling the classification of the merchandise herein, on the principle that tariff acts are intended to cover merchandise coming into existence in the future as well as the past.

Judgment will be rendered accordingly.