(C. D. 1261)

THE FAN CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 24, 1950)

*Strauss & Hedges*; *Barnes, Richardson & Colburn* (*James F. Donnelly* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a protest, arising at the port of New York, against the collector's assessment of duty on "butlers, trays, dumpers, boxes and similar merchandise" at the rate of 60 per centum ad valorem under paragraph 1552 of the Tariff Act of 1930 as "all smokers' articles whatsoever, * * * not specially provided for." It is claimed that the merchandise is properly dutiable as household utensils "at 50% under Par. 339, or at 35% under Par. 339 and T. D. 49753, or at 40% under Par. 339, or at 30% under Par. 339 and T. D. 51067, or at 25% under Par. 339 and T. D. 49753, or at 22½% under Par. 339 and T. D. 50797." Alternately, it is claimed that the merchandise is dutiable as manufactures of metal at 45 per centum ad valorem under paragraph 397 or at 22½ per centum under said paragraph and T. D. 50797.

At the trial the proof was limited to certain articles described in the invoices as "brass butlers" or "brass silent butlers." There were received into evidence two samples of the merchandise as plaintiff's exhibits 1 and 2. It was stipulated by counsel for the parties:

* * * that Exhibits 1 and 2 are in chief value of brass, are not plated with platinum, gold or silver, or colored with gold lacquer, nor are they of iron or steel, enameled or glazed with vitreous glass.

The pertinent provisions of the tariff act and the trade agreement cited in the protest are as follows:

PAR. 1552. Pipes and smokers' articles: * * * all smokers' articles whatsoever, and parts thereof, finished or unfinished, not specially provided for, of whatever material composed, except china, porcelain, parian, bisque, earthenware, or stoneware, 60 per centum ad valorem; * * *.

PAR. 339 [as modified by the trade agreement with Iran, T. D. 51067]. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for:

Composed wholly or in chief value of copper or brass, not plated with platinum, gold, or silver, and not specially provided for ____ 30% ad valorem

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of * * * brass, * * * but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

Plaintiff's exhibits 1 and 2 consist of square or oval-shaped decorated metal receptacles about 3½ inches long, 3 to 3½ inches wide, and three-fourths of an inch deep. Each has a decorated handle about 2½ inches long and a hinged, close-fitting cover with a small knob near the hinge so that it may be opened with the thumb when the receptacle is being held by the handle. The cover will remain open when it is pulled all the way back.

At the trial H. Lionel Herzfelder, called as a witness on behalf of the plaintiff, testified that he is an importer and president of the plaintiff company; that he is familiar with the merchandise involved

herein, described on the invoices as brass butlers; that similar articles were first brought in around 1935 to 1939; that his company was one of the first to have them made in China; that he sells these articles to gift shops, department stores, interior decorators, and housefurnishing stores in New York and throughout the United States. When asked to give the points of similarity or difference between these articles and ashtrays, he stated that an ashtray is uncovered and remains open, has a suitable shape and a cigarette rest; that he does not ordinarily consider articles ashtrays if they have covers; that in selling articles similar to the involved merchandise to purchasers they are called silent butlers; that he imports silent butlers of other sizes. There was then received in evidence as plaintiff's illustrative exhibit A another article which the witness stated was a silent butler of a larger size. It is an oblong metal receptacle about 6 inches long, $5\frac{1}{4}$ inches wide, and $1\frac{1}{2}$ inches deep. It has a handle similar to a cup handle and a hinged cover which can be opened with the thumb while one is holding the article by the handle. The Government conceded that articles similar to plaintiff's illustrative exhibit A are returned for duty as household utensils under paragraph 339.

Mr. Herzfelder testified that merchandise such as plaintiff's exhibits 1 and 2 and illustrative exhibit A are sold to the same class of trade and under the same designation; that he has seen similar articles in use on numerous occasions in people's homes; that they are used as silent butlers, that is, for the disposal of waste such as cigarette stubs, Martini toothpicks, olive pits, and candy papers; that he had seen one such article which had the cover ripped off used as an emergency ashtray; that he brings in frequent shipments of many different styles of similar shapes, 40 or 50 dozen of a style at one particular time.

On cross-examination the witness stated that the merchandise is not similar to an ashtray because the latter usually has a curved arc in the bottom rather than a straight angle such as plaintiff's exhibit 1 has; that he had seen women empty small ashtrays into receptacles such as plaintiff's exhibits 1 and 2. There were then received into evidence a photograph of six objects, three of which were identified as ashtrays (defendant's exhibit 3) and two ashtrays (defendant's collective illustrative exhibit B). The witness stated that he had seen the contents of ashtrays like those in defendant's collective illustrative exhibit B dumped into articles like plaintiff's exhibits 1 and 2; that many hostesses will not wait until an ashtray is filled but will remove two or three cigarette butts into the disposal unit and carry it away.

Mr. Herzfelder testified that plaintiff's exhibits 1 and 2 were designed so that the covers would not stay up, but the Chinese hinges were not mechanically perfect, and some of them would stay up without being

held; that plaintiff's exhibits 1 and 2 were obtained from its stock-rooms and may have been sold and returned as imperfect mechandise; that they are not perfect in that the covers stay up, whereas they should drop down by themselves.

Defendant then offered into evidence articles which the witness recognized as a nest of ashtrays (defendant's collective exhibit 6) and another article which the witness stated could be used for ashes or for paper clips (defendant's illustrative exhibit C). The latter is a metal tray in the shape of a leaf with a small object in the shape of a pipe attached to it. The witness stated that he had seen ashtrays smaller than those represented by defendant's collective illustrative exhibit B and illustrative exhibit C dumped into plaintiff's exhibits 1 and 2.

Henry L. Goetz, called as a witness by the plaintiff, testified that he is a wholesale merchant in gift wares and Chinese merchandise; that he has been handling imported merchandise for himself since 1935 and prior to that for about 10 years in a corporation of which he was a member; that during the course of his experience he has imported merchandise like plaintiff's exhibits 1 and 2 and articles similar to plaintiff's illustrative exhibit A except for the type of handle; that he has sold these articles to gift shops, department stores, and jobbers, primarily in the eastern part of the country but also to buyers from other parts of the country; that he sells them as silent butlers; that he has sold a thousand dozen at least; that he has never sold them as ashtrays.

The third witness called by the plaintiff was Evelyn Weiss, who testified that she owns a gift shop, which she has run for about 18 years; that she has sold merchandise similar to plaintiff's exhibits 1 and 2 and illustrative exhibit A; that she has sold them as silent butlers; that she has seen merchandise of this type used in homes of her friends; that they are used for the disposal of ashes, little papers, and anything that happens to be dropped on a table; that she has seen such usage on about a dozen occasions; that she has sold thousands of similar articles.

On cross-examination she stated that she had seen the contents of five or six ashtrays dumped into an article such as plaintiff's exhibit 2; that the ashtrays were similar to those in defendant's collective illustrative exhibit B; that the frequency with which ashtrays would be emptied depended upon the number of people smoking.

Defendant sought to introduce into evidence a page of the New York Herald Tribune of November 16, 1947, containing an advertisement, but the paper was not admitted and was marked defendant's exhibit 5 for identification. Defendant then called Edward J. Dougherty, customs agent, who testified that he had tried to find the author of the advertisement in defendant's exhibit 5 for identification but had been unable to locate her.

The issue in the instant case is one of fact, since classification under either paragraph 1552 as smokers' articles or under paragraph 339 as household utensils is dependent upon chief use. *United States* v. *Dunhill*, 13 Ct. Cust. Appls. 310, T. D. 41231; *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297; *United States* v. *The Friedlaender Co.*, 21 C. C. P. A. 103, T. D. 46445. It has also been held that the provision in paragraph 1552 for smokers' articles is more specific than the provision in paragraph 339 for household utensils and that where articles are used equally for the convenience of smokers and as household utensils, they are dutiable at the highest rate applicable, that is, 60 per centum ad valorem under paragraph 1552. *Baltimore Clipper Importing Co.* v. *United States*, 69 Treas. Dec. 895, T. D. 48324.

Plaintiff's witnesses testified that articles similar to those involved herein were sold and used as silent butlers and not as ashtrays. An examination of the samples discloses that they are similar in construction to plaintiff's illustrative exhibit A, which is conceded to be a silent butler and classifiable as a household utensil under paragraph 339, but they are smaller in size. They appear to be unsuitable for use as ashtrays. They have no cigarette rests or grooves, and the rim is so narrow that unless a lighted cigarette is carefully placed in the receptacle, it is in danger of rolling off onto the table. The handle serves no useful purpose and would only get in the way of a smoker. While the cover seems to stay up of itself, it will fall easily if the article is jostled, thus necessitating the opening of the cover again by the smoker.

Since the collector classified the merchandise as smokers' articles, it is presumed that he found all the facts necessary to bring the goods within that classification. In order to overcome the presumption of correctness attaching to his action, plaintiff must show that the classification was erroneous and that the merchandise is otherwise classifiable. *United States* v. *Lilly & Co.*, 14 Ct. Cust. Appls. 332, T. D. 41970; *V. E. Scott & Co.* v. *United States*, 14 Cust. Ct. 1, C. D. 902. We think the plaintiff has made out a *prima facie* case through the testimony of its witnesses and through the samples themselves, which are potent witnesses. The defendant introduced no evidence in support of its contention.

Plaintiff's three witnesses were in the business of buying and selling these articles for a number of years and were fully qualified to give their opinion as to their use. In *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31120, the court said (p. 124):

* * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares.

See also *Ignaz Strauss & Co., Inc.* v. *United States*, 9 Cust. Ct. 342, C. D. 710.

Mr. Herzfelder testified that he had sold this type of merchandise throughout the United States and Mr. Goetz stated that he had sold it primarily in the eastern part of the United States but that buyers from all over the country visit his building. Mr. Herzfelder and Miss Weiss testified as to use in homes of friends, without describing any particular geographical area in which such observations were made. It may be deduced from the evidence and from the character of the exhibits that the use of the articles would be the same in all parts of the country. Therefore, evidence establishing their chief use in a large area of the country is sufficient. *United States* v. *F. W. Woolworth Co.*, 23 C. C. P. A. 98, T. D. 47765; *Ignaz Strauss & Co., Inc.* v. *United States, supra.*

Defendant claims, however, that the provisions for smokers' articles in paragraph 1552 and the provision for household utensils in paragraph 339 are *eo nomine* designations by use and that the chief use of the article must be determined as of the time of the enactment of the tariff act and not as of the date of importation, citing *United States* v. *F. W. Myers & Co., Inc.*, 24 C. C. P. A. 464, T. D. 48913; *United States* v. *Belgam Corp.*, 22 C. C. P. A. 402, T. D. 47402; *Rossman* v. *Hedden*, 145 U. S. 561; *United States* v. *H. V. Albrecht*, 27 C. C. P. A. 112, C. A. D. 71. However, the rule cited in those cases is subject to an exception as to goods not known to commerce at the time of the passage of the tariff act but which subsequently become known under the tariff designation. In such cases, since proof of chief use at the time of passage of the tariff act is not possible, proof of chief use at the time of importation is controlling on the principle that tariff acts are intended for the future as well as for the present and will embrace merchandise whose existence was not known to commerce prior to the effective date of the tariff act. *United States* v. *Paul G. Downing*, 16 Ct. Cust. Appls. 556, T. D. 43294; *V. W. Davis* v. *United States*, 16 Cust. Ct. 163, C. D. 1005 (affirmed *sub nom. Victor W. Davis, Jr., Administrator, etc.* v. *United States*, 35 C. C. P. A. 79, C. A. D. 374); *W. J. Green* v. *United States*, 8 Cust. Ct. 173, C. D. 599.

In the instant case it appears from uncontradicted testimony that this type of merchandise was first brought in around 1935 to 1939; that Mr. Herzfelder was one of the first importers to handle these items, and that Mr. Goetz had imported merchandise of this kind since 1935. Since there is no evidence to show that the merchandise was known to commerce at the time of the enactment of the Tariff Act of 1930, the evidence as to usage since the time it began to be imported is controlling.

The uncontradicted evidence is that the imported merchandise was

used as waste disposal units, and it was conceded by counsel for the Government that similar merchandise in a larger size has been classified as household utensils under paragraph 339 of the Tariff Act of 1930.

Since it has been conceded that the merchandise is in chief value of brass, not plated with platinum, gold, or silver, it is properly dutiable at 30 per centum ad valorem under the provisions of paragraph 339 of the Tariff Act of 1930, as modified by the trade agreement with Iran, T. D. 51067. The protest is sustained as to the articles described in the invoices as "brass butlers" and as "brass silent butlers." As to all other items and in all other respects, the protest is overruled. Judgment will be rendered accordingly.